# BIRCH et al. v. UTAH–IDAHO CONCRETE PIPE CO.

## No. 1599.

United States District Court
D. Idaho, E. D.
March 28, 1951.

A. A. Merrill, Idaho Falls, Idaho, for plaintiffs.

Earl E. Garrity, Nampa, Idaho, Warwick Lamoreaux, Edgar C. Jensen, Salt Lake City, Utah, for defendant.

CLARK, District Judge.

This is an action by the plaintiffs Joseph M. Birch and Ida Jones against the Utah-Idaho Concrete Pipe Company, a corporation, for damages alleging that the defendant removed from mining claims owned by the Plaintiffs some 24,398 tons of pumice and converted and disposed of the pumice to plaintiffs' damage in the sum of $1.60 per ton. Plaintiffs also claim damage to the mining property.

This matter was first presented to the Court on a motion to dismiss. The motion was overruled and the defendant filed its answer. In this answer it is alleged: "That during July, 1948, plaintiffs caused to be filed in the District Court of the Ninth Judicial District of the State of Idaho, in and for Bonneville County, identical actions as constitute the first and second causes of action of plaintiffs' present complaint; that identical issues as contained in this case were joined in the former case in Bonneville County, and that said issues were tried without a jury by the Honorable Henry W. Martin, Judge of the Ninth Judicial District Court, during September 1949, in the case entitled Joseph M. Birch and Ida Jones, Plaintiffs, v. Utah-Idaho Concrete Pipe Company, a corporation, Case No. 7190 (Civil); that on the 18th day of October, 1949, the said Henry S. Martin Filed and caused to be served on the plaintiffs and the defendant therein and herein, his 'Findings of Fact, Conclusions of Law and Decree', a copy of which is attached hereto and made a part hereof by reference, and that said document is marked Exhibit 'a'; that said judgment, among other things, constitutes a complete adjudication of the issues undertaken by the plaintiffs to be again raised in this matter in the above entitled Court, and that as such the matter is res adjudicata."

After the answer was filed, a pre-trial conference was had and it was stipulated and agreed that this defense be submitted to the Court for decision on a complete record of the State Court proceedings. Counsel for both parties submitted their arguments to the Court and also presented briefs and the Court then took the matter under advisement.

The record of the State Court discloses the following facts: The case at the outset was heard on the amended supplemental complaint of the plaintiffs and on the answer to the amended supplemental complaints and the supplemental cross-complaints filed by the defendant and the answer to the amended supplemental cross-complaint. In addition to these pleadings the original complaints were to be considered. Witnesses were called and examined. Before the Court recessed for the day on August 29, 1949, certain rulings were made by the Court. Following this, there was a discussion between counsel out side of the hearing of the Court. (The record is silent as to what this discussion was about.) The next day August 30, 1949, there is the following entry by the Court: "Let the record show that counsel have informed the Court that they desire to discuss this case among themselves and we will recess until such time as counsel advise the Court that they are ready to proceed."

The Court then took a recess. Later that same day the Court reconvened and the following entry was made in the record by the Court: "Mr. Clerk, the record will show that the Court convened at ten o'clock and Counsel requested a recess and that now at the request of counsel for the plaintiffs and counsel for the defendant a further recess will be taken until one-thirty this afternoon."

When the Court reconvened at the scheduled time, Mr. Merrill, counsel for the plaintiffs, stated: "May it please the Court, the plaintiffs Joseph M. Birch and Ida M. Birch—I am sorry,—Ida Jones, have instructed their respective counsel that they have abandoned their cases including their supplemental complaints."

The record shows the discussion that ensued between Court and counsel after the Court was informed the plaintiffs had abandoned their complaints.

"The Court: And the supplemental complaints?

"Mr. Merrill: That's correct, Your Honor. And that they are not in a position, having abandoned their causes, to proceed, I take it, under the Statute, section ten

dash seven O five. And I might state, Your Honor, that if and in the event Counsel does not wish to dismiss and abandon their cross complaint against Joseph Birch we are ready and willing to defend the same at any time they wish to proceed with their cross complaint against Joseph Birch. Mr. Jensen may speak for himself on behalf of Mrs. Jones.

"Mr. Jensen: Mrs. Jones will appear and abandon the cross complaint against her now or at any time.

"The Court: Mr. St. Clair and Mr. Lamoreaux, do you have something to say?

"Mr. Lamoreaux: We are ready to proceed, Your Honor. I might say that we are taken by surprise, but are ready to proceed with the balance of the case.

"The Court: Well, it is the law, as I understand it, that a plaintiff may at any time, upon payment of the costs up to that time, abandon his case, and that a case abandoned during the process of the trial is considered to be abandoned before trial. If the plaintiffs in this case abandon their case, then the cross complainant may proceed on its cross complaint." (Discussion between court and counsel.)

"The Court: Mr. Lamoreaux and Mr. St. Clair, then if you care to at this time you may proceed with this case. If you need a recess to line up your witnesses on your cross complaint you may have it.

"Mr. Lamoreaux: We are proceeding under all of our pleadings and under all of our rights, and I heard the Court state that they could be heard concurrently."

Then the record, beginning on page 152, shows:

"The Court: That's right.

"Mr. Merrill: Well, I appreciate that, but even we have a right to know under which cause of action they are proceeding first.

"The Court: That will be developed, Mr. Merrill, by the evidence."

Later, while witness Jones was being examined, Mr. Merrill objected to certain questioning and the Court overruled the objection and said: "You may have your

objection to the whole line of cross examination".

The record is filled with objections by Mr. Merrill on all evidence pertaining to the facts alleged in the original complaints and supplemental complaints. However, this evidence was admitted by the Court.

Later we find another objection or statement as follows:

"Mr. Merrill: May it please the Court, before we start, I wonder if we may be advised under which one of the four causes of action they are pursuing, so that we can follow our complaint,—follow our pleadings. We don't know yet, Your Honor, and it's awfully hard for us to determine. They have got four separate causes of action, either one of which could be subject to a non-suit. We don't know which one they are pursuing, and we have a right to know that.

"The Court: I think I have ruled on that, Mr. Merrill, and the ruling will be the same, that they can pursue them concurrently.

"Mr. Jensen: At this time, Your Honor, I wonder if we might have a ruling on whether or not their fourth cause of action set forth in their cross complaint is now before the Court, or whether that has been abandoned. By their supplemental cross-complaint they re-allege all of their first, second and third causes of action, but say nothing whatsoever about their fourth cause of action. Are we to assume from that that it has been abandoned, or is that part, Your Honor, of the original cross complaint still before the Court, where the others have all been supplemented? Frankly, I can't tell how much we are being sued for.

"Mr. Lamoreaux: Your Honor, I can certainly state that we are abandoning nothing, and that the pleadings will speak for themselves."

Later we find the following in the record of the State Court:

"Mr. St. Clair: If Your Honor Please, calling your attention to page four of the defendant's answer and counterclaim, Your Honor, at the top of page four there

is a blank space, and following the blank space it says, "but admits that it has taken blank tons therefrom down to the time of answering this complaint." We wish at this time,—we hadn't that figure available, and it was understood we would supply it when we had it. I have advised counsel for the other side and the figure is thirteen thousand, eight hundred and fifteen, point forty-two. We wish to insert that in the pleadings.

"Mr. Merrill: We object to the amendment, Your Honor; there is no answer; the case had been abandoned, and there is nothing before the Court at all, and the amendment will be a nullity.

"The Court: The amendment may be made at this time."

This Court will not attempt to quote the entire record, however, it must be remembered that this case was not dismissed in the State Court; the plaintiffs' complaints and supplemental complaints were abandoned and dismissed, however, it appears throughout the case that the answer with its prayer for affirmative relief was still before the Court. From an examination of this answer it would appear that the answer is not sufficient to set up an affirmative defense and would necessarily cease to be a pleading in the case when the complaint and supplemental complaints were abandoned and dismissed. However the trial Court in the State action held otherwise, and it is not the province of this Court to sit as an appellate Court. If this was error there was a remedy available in an appeal to the Supreme Court of the State of Idaho.

The State Court in its memorandum decision (exhibit 1) said in part:

"In this case the plaintiffs sought to quiet their title in certain mining property, described in the complaint, against the defendant.

"During the trial, but before the case was submitted the plaintiffs abandoned their case, over the objection of the defendant, and the Court dismissed the plaintiff's complaint and amended supplemental complaint, upon their paying the costs reasonably accrued in the defense thereof to that time. Cost bill to be submitted by the defendant.

"The defendant-cross-complainant then presented its case on the parts of their answer and cross-complaint asking affirmative relief.

"It is the opinion of the Court that under the circumstances the cross-complainant is entitled to a complete and full adjudication of its cause, so far as can be done. * *

"There is sufficient evidence to sustain the affirmative defense in the answer of the defendant to the amended supplemental complaint, that the defendant did not prohibit the plaintiff, Joseph M. Birch, from entering upon the property. There is evidence that Birch removed considerable cinder. No damage on account thereof would therefore accrue to Birch.

"The evidence almost all tends to show that the activity of the defendant-cross-complainant has been of benefit to the property, as stated in the affirmative defense contained in the answer to amended supplemental complaint of Ida Jones. The amount of improvement was not clearly shown, but was considerable. * * *

"The preponderance of the evidence, and particularly the evidence of Mr. P. E. Camozzi, an experienced cinder man who operates a similar pit, was to the effect that the price of ten cents per ton for cinder as it lay in the ground, with the buyer having to extract it, paying all costs, was fair and reasonable. I have therefore concluded from the evidence that ten cents per ton, as it lay in the ground, is a fair and reasonable price under the circumstances as they apply to the property in this case.

"The evidence introduced in support of the allegations of cross-complainant's second cause of action in its answer and counterclaim contained, where it alleges that 13,815.42 tons of pumice were taken from the pit and shipped by railroad car, shows that 14,083.39 tons were actually extracted (see also Defendant's exhibit X). In addition, it was admitted that sixty tons had been sold to farmers, making a total of 14,114.34 tons extracted. This at ten cents per ton would be $1,414.34 (sic) due the plaintiffs-cross-defendants, on account of

pumice extracted by the defendant-cross-complainant. Which according to the amended divorce decree (Plaintiff's exhibit 11 introduced herein), should be divided one-third to Joseph M. Birch and two-thirds to Ida Jones.

"Of this amount, $669.00 was paid to Ida Jones on April 23, 1948 (Defendant's exhibit W), and the balance has been paid into the office of the Clerk of this Court (Defendant's exhibit W)."

The full opinion is in the record before this Court and following this opinion, in the same exhibit, is the State Court's Findings of Fact and Conclusions of Law, in part as follows:

"That the defendant, at its Ogden, Utah plant, tested the said sample of pumice shipped on February 25, 1948, from the above described property, and after making such tests, determined that it desired a contract for the acquisition of the said pumice deposit, and the defendant thereupon commenced the immediate removal of pumice from said property above described and shipped from said property a quantity of pumice, to-wit; 14,083.39 tons, and 60 tons were extracted and sold to farmers, making a total of 14,143.39 tons * * *.

"The Court further finds from the evidence that the reasonable price of said pumice under the circumstances, was ten cents per ton as it lay in the ground. That on account of pumice extracted the defendant was indebted to the plaintiffs in the sum of $1,414.34, which, according to the amended divorce decree, should be divided one-third to Joseph M. Birch and two-thirds to Ida Jones.

"The Court further finds that $669.00 was paid by the defendant to Ida Jones on April 23, 1948, and the balance has been paid into the *officer* of the Clerk of this Court * * *.

"That the work and activity of the defendant cross complainant was substantial improvement to the property in question. * * *

"That the contentions of the plaintiffs, that the contract was obtained by fraud and was unconscionable, were not sustained by the evidence, and are without merit.

"That the evidence failed to show any damage to said loading ramp caused by the said Joseph M. Birch, or his agents, and shows that after the said loading ramp was used by the said Joseph M. Birch it was thereafter, for a long period of time used by the defendant cross-complainant in loading pumice for shipment from the above described premises. * * *

"Conclusion of Law I. That the defendant cross-complainant is entitled to a complete and full adjudication of its cause on the parts of its answer and cross-complaint seeking affirmative relief. * *"

In this same exhibit there is a statement of the Court, preliminary to the specific findings, as follows: "And the case having proceeded to trial and decision upon the affirmative relief prayed for in the answer of the said defendant and upon the cross-complaint of the said defendant".

In the same exhibit the decree entered by the State Court in conformity with the findings of fact and conclusions of law is found. This decree was entered on the 18th day of October 1949. Prior to the 18th day of October, to-wit, on the 14th day of October 1949, plaintiffs' attorneys objected to the findings of fact, conclusions of law and decree. The record does not show any hearing on these objections but it is apparent that the objections were overruled for the findings of fact, conclusions of law and decree were signed on the 18th day of October 1949, which is after the objections were made. Later the Court made another order included in the same exhibit, which is in part as follows:

"Whereas, on the trial of the above entitled cause, the above named Court found that the above named defendant, Utah-Idaho Concrete Pipe Company, a corporation, has heretofore deposited certain monies for payment of pumice or cinders with the Clerk of the above named Court in connection with the above entitled cause; and

"Whereas, the above entitled Court found that the above named plaintiffs abandoned their respective causes of action at the trial of said cause, and, therefore,

no money judgment was rendered in said cause by said court in favor of the above named plaintiffs, or either of them."

This Court will not attempt to interpret this order in connection with matters before this Court.

While there is a great deal of authority on the question of whether the affirmative defense, as in the answer in this case, fell with the dismissal of the complaint and the State Court may have erred in making the findings of fact and conclusions of law and entering the decree based on the pleadings before it. However, if the plaintiff was not satisfied he could have moved for relief from the decree in the State Court and if unsuccessful he could have appealed to the Supreme Court of the State of Idaho; this he did not do and the decree is now a final decree in the State Court.

Plaintiff certainly cannot use this Court as an appellate Court and have this Court say whether or not the State Court erred, and if so, in what respect.

It would appear that the plaintiff was not satisfied with the forum in which he started his case and when things were not going satisfactorily to him he decided to abandon his case and find another forum in which to litigate his cause.

It may be that the State Court was in error in considering the affirmative defense set up in the answer. However, from an examination of exhibit 3 it is apparent that there were a great many matters discussed with the Court; off the record; and if this Court was to undertake to say from the record that the findings of fact, conclusions of law and decree were not supported by the pleadings and evidence, it would be doing it without a full understanding of what took place during the trial in the State Court. That Court is a District Court of the State. This Court is a District Court of the United States. It is no more the province of this Court to determine the correctness of the proceedings of the State District Court than it would be for that Court to determine the errors this Court might make.

I am of the opinion that the defendant's plea of Res Adjudicata is fully supported by the evidence before this Court.

By the same reasoning it is the opinion of this Court that the defendants are bound by the Judgment rendered by the State Court. They have pleaded it as a defense in this case as a final adjudication of their rights and there can be very little question but what they would be estopped to deny their liability under it.

Counsel for the defendants may prepare an Order in conformity with this opinion.